Wayne Jody GRAY, Plaintiff,

v.

**ALLSTATE INSURANCE CO., Defendant.**

C.A. No. 94C–03–163.

Superior Court of Delaware, New Castle County.

Submitted: July 31, 1995.
Decided: Aug. 17, 1995.

John F. Gangi, Gangi & Pritzkur, P.A., Wilmington, for Plaintiff.

Dennis D. Ferri, Law Offices of Dennis D. Ferri, P.A., Wilmington, for Defendant.

## DECISION AFTER NON–JURY TRIAL AND POST–TRIAL BRIEFS

QUILLEN, Judge:

This is the Court's opinion after a non-jury trial held on July 25, 1995. The burden of proof is, of course, on Wayne Jody Gray, the plaintiff. I will refer to Perry Peterson, the driver of the motor vehicle, as the "insured." The relevant insurance is the no-fault benefits under the insured's policy with Allstate Insurance Company, the defendant. The plaintiff, while bicycling, was injured on April 20, 1993 as he was leaving Rockford Park on Tower Road in Wilmington. The insured was driving into Rockford Park, in the opposite direction as the plaintiff, on Tower Road. Plaintiff was injured under the following peculiar circumstances.

There was no collision. Moreover, in traditional tort terms, the plaintiff has not carried the burden of showing the accident was proximately caused by the insured's negligence. Furthermore, in trying to reconcile the testimony, the Court finds the insured's view of the event to be the more reliable because his attention to the road ahead was never diverted while the plaintiff had looked behind him just before the accident. It appears to the Court that the following description is what probably happened. The plaintiff bicyclist, going out of Rockford Park, while approaching a curve to his left on a relatively flat portion of a larger moderate downhill slope, at an accelerating speed, on a roadway with at least some mud, diverted his

attention from the roadway to look behind him. The insured, having recently entered Rockford Park, was passing a pedestrian walking on his right and edged toward the center of the roadway. But it has not been proved that the insured crossed the double yellow line of Tower Road in so doing. In short, in traditional terms, I find the insured was not negligent and his negligence was not a proximate cause of the impending accident. The plaintiff, upon refocusing on the roadway ahead, was confronted with oncoming traffic (the insured's vehicle) slightly bearing toward the center of the roadway while plaintiff had previously anticipated the necessity of a move to the left to make the curve. Plaintiff felt forced to turn defensively to the right and braked and lost control of the bike on the roadway and solo crashed. The plaintiff's own negligence was the sole proximate cause of the accident and his own injuries. In terms analogous to the traditional jury charge, he, consistent with his own safety, simply failed to control his bike as he descended toward the Rockford Park exit.[1] But that does not end the matter because this lawsuit is brought to recover loss of earnings, medical expenses, and bicycle property damage under the no-fault provisions of the insured's policy with the defendant.

In particular, the plaintiff claims that he is entitled to recovery of "No Fault" Personal Injury Protection ("PIP") benefits for medical expenses pursuant to 21 *Del.C.* § 2118. Subsection 2118(a)(1) states that an *owner* of a motor vehicle registered in Delaware must maintain the following minimum insurance coverage:

Indemnity from legal liability for bodily injury, death or property damage **arising out of** ownership, maintenance or use of the vehicle to the limit, exclusive of interest and costs, of at least the limits pre-

scribed by the Financial Responsibility Law of this State. (Emphasis added).

Also, subsection 2118(a)(2)(c) states:

The coverage required by this paragraph shall be applicable to each person occupying such motor vehicle and to any other person **injured in an accident involving such motor vehicle,** other than an occupant of another motor vehicle. (Emphasis added).

The language of the PIP policy at issue in this case states that "[p]ayments will be made only when the bodily injury, sickness, disease or death is **caused by an accident involving a motor vehicle**" (emphasis added). Therefore, the legal issue presented here is whether the plaintiff "was injured in an accident involving such motor vehicle" within the meaning of 21 *Del.C.* § 2118 and Allstate's PIP policy.

As an initial matter, the tendency of courts interpreting individual motor vehicle insurance policy clauses, under compulsory insurance statutes, has been toward liberal construction in order to achieve the public policy objective of universal coverage. *Morgan v. State Farm Mut. Auto. Ins. Co.,* Del.Super., 402 A.2d 1211, 1215 (1979). The fundamental purpose of Delaware's financial responsibility laws is to protect and compensate all persons injured in automobile accidents. *Hudson v. State Farm Mut. Ins. Co.,* Del.Supr., 569 A.2d 1168, 1171 (1990). Section 2118 is entitled to liberal construction in order to achieve its purpose. *Cicchini v. State,* Del.Super., 640 A.2d 650, 652 (1993), *aff'd,* Del.Supr., No. 249, 1993, 1994 WL 148107, Holland, J. (Apr. 4, 1994). Also, in the absence of statutory language permitting a contract policy exclusion of a non-contact injury from PIP coverage, such an exclusion in the case of a pedestrian is invalid in Delaware. *Nationwide Mut. Ins. Co. v. Grimm,* Del.Super., C.A. No. 85A–AP–18, 1986 WL 1271, Taylor, J. (Jan. 14, 1986);

---

1. The traditional jury charge on common law control is along these lines:

It is the duty of every operator of an automobile to keep it under proper control. This means that the vehicle must be operated at such speed and with such attention as will enable the driver to stop it with a reasonable degree of quickness, or within a reasonable

distance, or to reasonably avoid objects or other vehicles on the highway, dependent on existing circumstances and the likelihood of danger to others.

Failing to maintain sufficient control to keep on one's bicycle and to keep one's bicycle on the roadway would appear to be an *a fortiori* case.

*Brown v. Scott*, Del.Super., C.A. No. 79C–MY–81, Christie, J. (Oct. 30, 1980) (relying on *Abramowicz v. State Farm Mut. Automobile Ins. Co.*, Del.Super., 369 A.2d 691 (1977), *aff'd*, Del.Supr., 386 A.2d 670 (1978)).

On several occasions, this Court has discussed the causal nexus between an injury and an automobile accident which is required to trigger coverage under § 2118(a)(2)(c). "While a causal connection between use of the vehicle and the injury is required, there is no requirement to show that the injury was proximately caused by the use of the automobile. Rather, the showing must be that the injury occurred by virtue of the inherent nature of using the motor vehicle." *Dickerson v. Continental Casualty Co.*, Del.Super., C.A. No. 82C–MR–8, Poppiti, J. (Sept. 1, 1983) (citing *Hutchins v. Mills*, Fla.Dist.Ct.App., 363 So.2d 818, 821 (1978), *cert. denied*, Fla.Supr., 368 So.2d 1368, (1979); *Padron v. Long Island Ins. Co.*, Fla. Dist.Ct.App., 356 So.2d 1337, 1338–39 (1978)). "Additionally, the phrase, 'injury arising out of' has within the context of no-fault statutory schemes been read to mean an injury which originates from, is incidental to, or has some connection with the use of a motor vehicle." *Id.* (citing to *Padron*, 356 So.2d at 1338–39).

This Court has also interpreted the word "occupying" as used in § 2118(a)(2)(c) several times. *Messick v. Reliance Ins. Co.*, C.A. No. 94C–07–188, 1995 WL 465181, Barron, J. (July 26, 1995) (Mem.Op. at 6); *see also Carter v. Nationwide Ins. Co.*, Del.Super., C.A. No. 92C–01–016, 1992 WL 240479, Steele, J. (Aug. 26, 1992); *Adamkiewicz v. Milford Diner, Inc.*, Del.Super., C.A. No. 90C–JA–23, 1991 WL 35709, Steele, J. (Feb. 13, 1991) (holding that plaintiff who slipped on ice while approaching her car lacked the necessary nexus with the vehicle and therefore was not an occupier of a motor vehicle); *Walker v. M & G Convoy, Inc.*, Del.Super., C.A. No. 88C–DE–191, 1989 WL 158511, Taylor, J. (Nov. 2, 1989) (holding that plaintiff who slipped and fell on ice while securing cars on his employer's motor vehicle carrier preparing to travel was very close to the vehicle and engaged in a task related to the vehicle and therefore was an occupier of a

motor vehicle); *Sczubelek v. Maahs*, Del.Super., C.A. No. 84C–FE–31, 1986 WL 15440, Balick, J. (Sept. 11, 1986) (holding that police officer plaintiff who was injured approaching a vehicle he had stopped from the rear which lurched backward was an occupier of a motor vehicle under either a geographic perimeter or vehicle-related-task test); *Thomas v. Nationwide Mut. Ins. Co.*, Del.Super., C.A. No. 82C–C–109, Poppiti, J. (Feb. 8, 1984) (holding that a genuine issue of material fact existed as to whether plaintiff, who was approaching a car to enter it as a passenger, was occupying a motor vehicle).

In *Messick*, the plaintiff was a tow truck operator who was sweeping debris from a roadway at a motor vehicle accident site pursuant to a contract between his employer and the Delaware State Police. The plaintiff was 61 feet away from the tow truck sweeping debris off a roadway when he was struck by a motor vehicle. The insurer of that driver tendered policy limits, and the plaintiff applied for PIP benefits and underinsured motorist benefits under a policy issued to his employer. The insurer denied coverage on the grounds that plaintiff was not "occupying" the tow truck at the time of the accident.

The *Messick* Court, however, held that plaintiff was "occupying" the vehicle within the meaning of the policy and Delaware's No Fault law. The Court held that under either a "reasonable geographic perimeter test" or a "vehicle-related-task test," the plaintiff had met the definition of "occupying." *Id.* at 6. In summary, the Court applied "the conventional language of but-for causation," and found that the plaintiff would not have been injured "if he had not been operating the . . . tow truck." *Id.* at 9. Compare, however *Carter, supra*, where the plaintiff was a passenger who filled the insured's vehicle with gas. Upon completion, the plaintiff hung the nozzle into its housing and turned around. While doing so, the plaintiff slipped on a patch of oil. Although the *Carter* Court granted the defendant's motion for summary judgment on the "critical issue [of] whether the plaintiff 'occupied' the insured's pickup truck at the time of the fall and injury," the Court also said that "clearly there was no

accident *involving* the vehicle." *Carter, supra* at 3.[2]

In *Darel v. Pennsylvania Mfrs. Ass'n. Ins. Co.,* N.J.Supr., 114 N.J. 416, 555 A.2d · 570 (1989), the New Jersey Supreme Court affirmed the granting of PIP benefits to a plaintiff bicyclist injured in a "no contact" accident with a motor vehicle. The plaintiff rode a bicycle off of a sidewalk onto the road and into the path of an oncoming automobile. *Id.* 555 A.2d at 571. The plaintiff and the driver of the motor vehicle both swerved to avoid a collision, and as a result of swerving, the plaintiff fell and sustained injuries. *Id.* The trial Court found that not only was the driver of the automobile not negligent, but also the plaintiff herself was negligent. *Id.*

The critical issue in *Darel,* according to the Court, was whether the plaintiff's injuries were caused by the insured's automobile. *Id.* 555 A.2d at 574. Based in part on a policy of liberally construing New Jersey's No Fault Act, the Court interpreted the statutory phrase "injuries caused by the named insured's automobile." *Id.* 555 A.2d at 571, 574. The Court said it would not subject the phrase "caused by" to a microscopic examination in a search for nuances of language or distinctions of meaning but rather applied its "common meaning." *Id.* 555 A.2d at 574–75. The Court said therefore that application of a "but for" test was adequate to determine whether a specific automobile could be considered to have caused a plaintiff's injuries. Based on a "but for" analysis, the Court held that the plaintiff qualified for PIP benefits.

 In this case, where the Court is faced with a threshold determination of whether plaintiff was injured in "an accident involving [a] motor vehicle," the plaintiff swerved to avoid a motor vehicle. The policy phrase "caused by an accident involving a motor vehicle" must be interpreted from the viewpoint of an injured person. *Hudson v. State Farm Mut. Ins. Co.,* Del.Supr., 569 A.2d 1168, 1171 (1990). As interpreted from the plaintiff's viewpoint in this case, plaintiff was injured in an accident involving a motor vehicle because he sought to avoid a collision with a motor vehicle. While the Court finds that the plaintiff himself was negligent, that negligence cannot be considered determinative of coverage availability because the primary objective of § 2118 is to provide coverage regardless of fault. *See id.* at 1171. Accordingly, based on a policy of liberal statutory interpretation of § 2118(a)(2)(c), and interpreting the policy from the plaintiff's viewpoint, the Court finds that plaintiff was injured in an accident involving a motor vehicle under § 2118(a)(2)(c).[3]

2. Recently, this Court discussed the issue of causation regarding the extent of a claimant's damages pursuant to 21 *Del.C.* § 2118. *See State Farm Mut. Ins. Co. v. Olanowski,* Del.Super., C.A. No. 94C–03–298, Quillen, J. (May 30, 1995). The issue in *Olanowski* concerned indemnification for surgery and related expenses incurred after an automobile accident, and it was not disputed that an accident had in fact occurred resulting in injuries to the claimant. The PIP insurer denied coverage for half of the cost for one of plaintiff's surgeries based on a physician's report which stated "[t]he motor vehicle accident was an aggravating factor and contributed approximately 50% to the need for surgery." The Court applied a "proximate cause" standard to determine the extent of injuries attributable to the accident in *Olanowski* based, at least in part, on the phrase "[i]ndemnity from legal liability for bodily injury ... arising out of ... use of the vehicle." The Court said it did "not find anything in the statute which, under the circumstances prevailing here, justifies departure from the normal 'proximate cause' tort standard" as it relates to damages covered under 21 *Del.C.* § 2118(a)(1) and (2)a. *Olanowski, supra* at 3.

The Court in *Olanowski* cited to *Moody v. Nationwide Mut. Ins. Co.,* Del.Supr., 549 A.2d 291 (1988) and particularly the dissent at 549 A.2d at 294. The *Moody* Court considered the issue of whether a claimant provided sufficient evidence to justify submission of his claim to the jury. *Moody,* 549 A.2d at 291. The dissent noted that a plaintiff's burden of proving lost wages under § 2118 was not different from the proof required in the usual tort claim. *Id.* at 294–95. Thus the majority and the dissent in *Moody* agreed that the burden of proof required to establish the extent of damages under § 2118 was the same as in a normal tort case.

3. I confess this result is somewhat grating to one who grew up in the common law tradition, favoring individual responsibility and suspicious of opportunities for fraud. Moreover, the result might be a contributing factor to why insurance rates are high and certain leading automobile insurers are leaving Delaware, thus almost guaranteeing a competitive situation where rates will continue to rise. But the General Assembly extended coverage to "any other person injured in an accident involving [the insured] motor vehicle **other than an occupant of another motor vehi-**

This result is consistent with *Dickerson* where the Court said that a plaintiff is entitled to compensation under § 2118 if a plaintiff could show that "the injury occurred by virtue of the inherent nature of using the motor vehicle." *Dickerson, supra* at 4. Certainly, it is inherent in the use of a motor vehicle that a bicyclist would attempt to avoid a possible collision with a motor vehicle by swerving. In that sense the plaintiff's injuries originated from, were incidental to, or had some connection with the use of a motor vehicle. *See id.* The result in this case is also consistent with the spirit of the *Morgan, Hudson, Cicchini, Grimm, Brown, Abramowicz, Messick, Walker, Sczubelek,* and *Thomas* cases heretofore cited.

Judgment is entered in favor of the plaintiff. IT IS SO ORDERED.

**cle."** 21 *Del.C.* § 2118(a)(2)(c) (emphasis added). This definition in a no-fault law mandates a public policy favoring the negligent pedestrian, bicyclist, etc. over the no-fault vehicle insurer and more significantly over the insured who pays the bill.